IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NADYNE TIMBERLAKE,** | : | Civil Action |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **TARGET CORP.,** | : | No. 11-3051 |
| *Defendant.* | : | |
| | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                 APRIL 25, 2012

Ms. Nadyne Timberlake brings this suit after slipping on a puddle and falling at a Target department store, claiming various permanent injuries as a result.  Defendant Target Corporation ("Target") now moves for summary judgment, arguing that a gap of seven minutes between the creation of the puddle and Ms. Timberlake's fall is, as a matter of law, not enough time to impute constructive knowledge of the hazard to Target such that it could have liability for Ms. Timberlake's accident.  The motion has been fully briefed, oral argument was held on April 9, 2012, and the matter is now ripe for decision.  For the reasons outlined here, the Court must decline to accept Target's conclusion as to the state of the law.

**BACKGROUND**

The following are the facts of the case, recounted in the light most favorable to the non-moving party, Ms. Timberlake.  Ms. Nadyne Timberlake was shopping at the Target store at 4000 Monument Road, Philadelphia on February 11, 2009 when she slipped and fell on a puddle of what has been agreed by the parties to be baby vomit, injuring her right wrist, right "pinky" finger, and left knee.  Ms. Timberlake, a business invitee and Pennsylvania resident, sued Target,

1

a Minnesota corporation, for negligence in Pennsylvania state court. Target removed the matter to this Court.

According to a surveillance video of the incident, a baby vomited on the floor near a store entrance at around 2:48pm. Ms. Timberlake slipped and fell at the spot seven minutes later, at 2:55pm. The video shows various Target employees walking and/or standing near the site of the puddle between the time the baby spit up and Ms. Timberlake's fall. One of those Target employees, Travis Fletcher, made the statement that, "I was told that I was on tape by area before the incident. I walk by this area all day during my shift. I was not paying any attention to the area before the incident." At her deposition, Ms. Timberlake described the baby vomit as a clear liquid puddle the size of a salad plate with a pinkish substance the size of a fifty cent piece in the middle. A Target employee at the scene after Ms. Timberlake had fallen described the vomit as a "12" x 8" or so spill."

**LEGAL STANDARD**

Upon motion of a party, summary judgment is appropriate if, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," the moving party persuades the district court that "there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 217, 322 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

**DISCUSSION**

Under Pennsylvania law, to succeed on a claim of negligence against a business owner, a business invitee must show that the business owner (1) knew or by using reasonable care should have known of an unreasonable risk of harm to business invitees, (2) should not expect invitees to discover or protect themselves from the danger, and (3) failed to exercise reasonable care to protect business invitees from the danger. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983); *see also* Restatement (Second) of Torts § 343. The issue here centers on the first element of this test – whether Target created the dangerous condition or had actual or constructive notice of the dangerous condition.

It is clear from the record that Target did not create the puddle and that Target did not have actual notice of the puddle. Therefore, the Court must evaluate whether there is any factual issue as to whether Target had constructive notice, i.e., using reasonable care should ave known about it. Courts in Pennsylvania look at a variety of factors to determine constructive notice, including "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Craig v. Franklin Mills Assoc.*, 555 F. Supp. 2d 547, 549-50 (E.D. Pa. 2008) (internal quotation omitted). In particular, "the time elapsing between the origin of the defect or hazardous condition and the accident" is "one of the most

3

important factors to be taken into consideration" in the constructive notice analysis. *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001). While the evaluation of the constructive notice factors is usually a task for the jury, if the evidence "requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the Court." *Craig*, 555 F. Supp. 2d at 550 (quoting *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)).

The great majority of Pennsylvania cases discussing constructive notice in which courts grant summary judgment, other pre-trial disposition, or directed verdict involve situations in which the plaintiffs are unable to submit any concrete evidence as to how long the spill or puddle existed. *See, e.g., Craig*, 555 F. Supp. 2d at 550-53; *Estate of Swift v. N.E. Hosp.*, 690 A.2d 719, 722-23 (Pa. Super. 1997). A very few cases do involve discrete time periods on the order of the time lapse involved in this case. For example, more than five decades ago, the Pennsylvania Supreme Court, addressing a case involving a large puddle in a store aisle that had been in existence for at least 3 to 5 minutes, affirmed an order of nonsuit and noted that "[n]o Court has ever held that five minutes is sufficient constructive notice of a dangerous condition; to so hold would be to make the defendant an insurer." *Parker v. McCrory Stores Corp.*, 101 A.2d 377, 378 (Pa. 1954).

On the other hand, less than two years ago, a court in this district denied a defendant's motion for summary judgment in a case in which a puddle was only on the floor of a retail establishment for a minute and 41 seconds. *See Vazquez v. Wal-Mart Stores*, Civil Action No. 09-2609, 2010 WL 3167857, at *1 (E.D. Pa. Aug. 9, 2010). In that case, a child interacted with an "impulse display" of bubble solution by pouring the contents of a bottle of bubble solution onto the floor and then sliding and dancing on the liquid. After he did so, two other customers

walked over the spot without incident, and a minute and 41 seconds after the child spilled the liquid, the plaintiff slipped on it and fell. *Id.* Applying Pennsylvania law, the court denied the defendant's summary judgment motion because a jury could find that Wal-Mart either created the danger by intentionally placing the impulse display within the reach of children or had constructive notice of the danger because the child played with the bottle and played in the spill just before the plaintiff fell. *Id.* at *4.

These cases clearly illustrate the lack of a bright-line rule governing how long is long enough to impute constructive notice to a defendant retailer in which young children are often on the premises, and the importance of the facts presented by each individual case. While the Court recognizes that seven minutes is certainly a short time period, this is not the type of case that would "require[] the jury to resort to 'conjecture, guess or suspicion,'" such that the Court should undertake the weighing of the facts on its own, particularly where the facts include information beyond simply the elapsed time, i.e., the presence of Target employees. Rather, this case involves precisely the type of factual analysis that is best suited for a jury. Therefore, the Court is obliged to deny Defendant's motion for summary judgment in favor of enlisting a jury to undertake one of the central tasks for which we turn to jurors in civil cases.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment will be denied. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE